Chief Judge Fuld (dissenting in part).
In view of the unusual facts and circumstances of this case, Rufus Lee (hereafter referred to as the defendant) should not be compelled to submit to the psychiatric examination directed by the Appellate Division.
The homicides for which he was indicted, committed in November of 1.964, occurred two days after he had been released from a mental institution, following an extended period of treatment for his condition. Three months later, upon application of the District Attorney, he was mentally examined, pursuant to section 658 of the Code of Criminal Procedure, by two court-designated psychiatrists. Both of them reported that he was [1] ‘ idiotic, imbecilic or insane ’ ’ to such an extent that ‘ ‘ he [could] not understand the nature of the 'charge ” and “ would not be able to participate in his defense ’
The trial judge, however, disagreed with this conclusion and directed that the defendant be tried. The two court-appointed psychiatrists testified at the trial that the defendant was not legally sane at the time the crimes were committed and did not know or appreciate what he was doing or that it was wrong, and a third psychiatrist testified to the same effect. The only opposing testimony came from a doctor who, basing his opinion solely on a half-hour reading of the defendant’s hospital records, had not examined or interviewed him personally.
Notwithstanding this evidence, the jury found the defendant guilty, and he was sentenced to life imprisonment. The Appellate Division, however, reversed the judgment on the ground that “ [t]he People failed to prove beyond a reasonable doubt that defendant possessed substantial capacity to know or appreciate his conduct and its consequences ”. (People v. Lee, 29 A D 2d 837, 838.) Although this should, in my opinion, have led to reversal of the judgment and dismissal of the indictment, the Appellate Division directed a new trial.
It was in preparation for that trial that the District Attorney — in July, 1969, almost five years after the commission of the crimes and despite the fact that the earlier examination had been conducted by court-designated psychiatrists upon the prosecution ’s own request — applied for a new mental examination. As I *446 have already stated, I do not believe that the People are entitled to such an examination. In the first place, there is no authority, in statute or decision, for the District Attorney’s position that, even though the People had already procured one examination under section 658 of the Code, in which the defendant fully co-operated, they might secure another for the purpose of acquiring additional psychiatric testimony to assist them in obtaining a conviction. In the second place, since it was the prosecution which had subjected Lee to a mental examination by court-designated psychiatrists in 1965 (shortly after the homicides), it seems to me that, to compel him to go through the travail of another extended psychiatric examination more than six years after the crimes had been committed—having in mind his long record of mental illness, the proceedings already held and the Appellate Division’s 1968 reversal of his conviction because “ [t] he-People failed to prove beyond a reasonable doubt ” that the defendant was legally sane—would be unduly burdensome and egregiously unfair as a matter of law.
Accordingly, I would grant Lee’s petition and hold that he may not be compelled to submit to a further psychiatric examination.
Although I might well conclude at this point, I am impelled to add that, if we had before us the usual case of a defendant who had refused to answer questions upon his initial mental examination, I would subscribe to the principle announced by the court that an accused who pleads insanity as a defense' may not insist upon his privilege against self incrimination. I strongly disagree, however, with the court’s further determination that defense counsel must be barred from taking an active role during the interrogation of his client at a psychiatric examination (opn., p. 444). A defendant’s Sixth Amendment right to assistance of a lawyer exists separate and apart from his Fifth Amendment privilege against self incrimination and, quite obviously, the fact that one accused of crime may have waived his privilege cannot—as is suggested (opn., p. 443) — destroy or impair his constitutional right to an attorney. I think it self-evident that to restrict a defendant’s right to a lawyer upon his pretrial mental examination — at least when he is being questioned for the purpose of determining his mental condition at the time of the crime—will frequently have the *447 effect of substantially abridging, if not eliminating, every right he may have to the effective assistance of counsel in the preparation of his defense. (See People v. Al-Kanani, 26 N Y 2d 473, 477; see, also, People v. Donovan, 13 N Y 2d 148, 151; People v. Waterman, 9 N Y 2d 561, 565; People v. Di Biasi, 7 N Y 2d 544, 550; Note, 51 Geo. L. J. 143, 161-162; cf. In re Spencer, 63 Cal. 2d 400, 409, 410; Wade v. United States, 388 U. S. 218, 224 et seq.; Thornton v. Corcoran, 407 F. 2d 695, 698 et seq.) “ In view of the importance of this [pretrial] examination’’, it has been said (Note, 51 Geo. L. J., at p. 162), “ the dangers inherent in subjecting the defendant to it without giving him the benefit of an attorney’s advice are obvious. The * * * often uneducated defendant will seldom understand the far reaching significance of the questions put to him by a trained psychiatrist. Questions calling for seemingly innocuous answers can be aimed at eliciting the most damaging responses. Without the benefit of counsel to advise him, it is quite likely that the * * * accused will unknowingly provide the prosecution with sufficient evidence to secure his conviction by defeating his defense of insanity before the trial has even begun. In such a situation the harm done to the defendant’s case is irreparable. When the sole issue is the defendant’s sanity at the time of the crime, the right to the assistance of counsel is thus as important at the time of the defendant’s mental examination as it is at the time of the trial itself”. (Emphasis supplied.) I agree that some sacrifice of individual liberty is necessary in this area of the law but I perceive no justification for denying the defendant all opportunity to be represented by counsel during his interrogation at such a critical stage of the proceedings.
I would modify the order appealed from by reversing so much of it as directs a new mental examination.